UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| PAULA A. VICK,<br><br>           Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>           Respondent. | Case No. 1:10-CV-00562-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Petitioner Paula Vick's ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed on November 15, 2010. The Court has carefully and thoroughly reviewed the Petition for Review, the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on August 30, 2007, alleging disability since August 23, 2006, due to low back pain and psychological impairments related to her pain. The application was denied initially and

**MEMORANDUM DECISION AND ORDER - 1**

on reconsideration, and a hearing was held on December 10, 2009, before Administrative Law

Judge ("ALJ") Michael Kilroy. After taking testimony from Petitioner, vocational expert Anna

Austin, and James Bruce, M.D., ALJ Kilroy issued a decision finding Petitioner not disabled in a

decision dated February 19, 2010. Petitioner timely requested review by the Appeals Council,

which denied her request for review on September 17, 2010. Petitioner appealed this final

decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42

U.S.C. § 405(g).

At the time of the hearing, Petitioner was 48 years of age. Petitioner has a high school

education, and her prior work experience includes work as a cashier at a national retail store.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a

claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined

whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not

engaged in substantial gainful activity since her alleged onset date. At step two, it must be

determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's

degenerative disc disease of the lumbar spine, status post fusion; diabetes; anxiety; and mood

disorder with depressive features secondary to her back pain severe within the meaning of the

Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The

ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed

impairments, specifically considering section 1.04 related to disorders of the spine, section 9.08

related to diabetes mellitus, and sections 12.04 and 12.06, both related to mental impairments. If

**MEMORANDUM DECISION AND ORDER - 2**

a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform her past relevant work as a cashier checker, which was medium in exertional demand. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ determined that Petitioner retained the RFC to perform light work, with accommodations, and could perform work as a Cashier II, Assembler-electrical accessories, or Agricultural Sorter.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the

decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. §

405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v.

Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841,

846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It

is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066

(9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v.

Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist that supports the petitioner's claims.

42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir.

1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence,

will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence

to support the decision of the Commissioner, the decision must be upheld even when the

evidence can reasonably support either affirming or reversing the Commissioner's decision,

because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v.

Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question

an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility

assessment is entitled to great weight, and the ALJ may disregard self-serving statements.

*Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful

consideration of subjective complaints but provides adequate reasons for rejecting them, the

**MEMORANDUM DECISION AND ORDER - 4**

ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred at step four in assessing her residual functional capacity to perform light work. Specifically, Petitioner contends that the ALJ erred in finding Petitioner's subjective complaints of pain and related depression not credible. Second, Petitioner asserts the ALJ erred in rejecting the medical opinion evidence of Dr. Lawrence Stoune, Petitioner's treating physician, and accepting Dr. Sant's opinion, an examining source. Petitioner further argues that the ALJ failed to consider the factors in 20 C.F.R. § 404.1527(d)(2)-(6) when he weighed the medical opinion evidence. And third, Petitioner contends that the ALJ relied upon flawed vocational expert testimony because the hypothetical questions posed to the expert did not set forth all of Petitioner's limitations and the vocational expert's hypothetical assumptions lacked support in the record.

### 1. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is

**MEMORANDUM DECISION AND ORDER - 5**

affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and

convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are

insufficient; the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by

substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294,

1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility

finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959

(9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its

judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility

evaluation, including considering claimant's reputation for truthfulness and inconsistencies in

claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities,

claimant's work record, and testimony from physicians and third parties concerning the nature,

severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d

947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of

symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of

medications; and, treatment measures taken by the claimant to alleviate those symptoms. *See*

Soc. Sec. Ruling 96-7p.

The ALJ concluded Petitioner was not credible because her statements concerning the

intensity, persistence and limiting effects of her pain symptoms and psychological symptoms

were "inconsistent with the [ALJ's] residual functional capacity assessment." (AR 25.) The ALJ

**MEMORANDUM DECISION AND ORDER - 6**

concluded also that Petitioner was not credible because, although Petitioner had objective

medical evidence of an underlying impairment, her allegations that the impairment prevented her

from "all work activity" were not credible. (AR 25.) The ALJ additionally relied upon the

medical record, which the ALJ determined contained findings upon clinical examination that he

found "inconsistent with a claim of an inability to perform any sustained work activity." (AR 26.)

First, it was error for the ALJ to use his RFC assessment and his conclusion that her

impairment—back pain—did not preclude her ability to perform work as a benchmark to assess

Petitioner's subjective experience of pain and the effect of her psychological impairments. The

ALJ is prohibited from considering the objective medical evidence alone to evaluate an

individual's subjective experience of pain, and must instead "carefully consider the individual's

statements about symptoms with the rest of the relevant evidence in the case record" before

reaching a conclusion about the credibility of the Petitioner's statements about her symptoms.

Soc. Sec. Ruling 96-7p(3). The ALJ cannot create a circular argument that credits Petitioner with

an underlying impairment on the one hand, but then rely upon the same medical evidence to

discredit Petitioner's subjective complaints of pain resulting from that impairment.

Second, the ALJ failed to consider the objective medical evidence as a whole. The ALJ

concluded that the objective medical evidence, such as the CT scan and x-rays of Petitioner's

lumbar spine taken in September and October of 2006, showed very little in the way of

post-operative changes after Petitioner's L4-5 posterior interbody fusion in April of 2004. (AR

25—26.) However, despite Petitioner's consistent reports of pain to her treating physician, Dr.

Stoune, between 2004 and 2009, the ALJ concluded Petitioner could work because she was able

to work after her surgery in April of 2004, up through her date of claimed disability in August of

**MEMORANDUM DECISION AND ORDER - 7**

2006. But the ALJ's conclusion that Petitioner was able to work after her back surgery in 2004 up through her date of disability ignores the other evidence in the record that Petitioner reported worsening pain after her surgery. Petitioner testified that she took a leave of absence for one year after the surgery, but her employment was terminated when she was unable to return to work because she could not tolerate the demands of work after surgery. (AR 50.) Pay stubs from Petitioner's employer in 2006 indicate that Petitioner gradually began taking leave, and her earnings reflect an increase toward the end of the year for sick pay, vacation pay, and holiday pay. (AR 143—150.) On October 18, 2006, Petitioner presented to her treating physician, Dr. Stoune, "crying," with complaints that she could not walk, sit, or work because of pain. (AR 403.) Moreover, the MRI report showed post-operative changes, although mild, from Petitioner's prior fusion surgery, along with a significant 50 pound weight gain. (AR 288, 48.)

The ALJ also did not fully consider the evidence in the record concerning Petitioner's daily activities, which she reported consistently on her disability forms, to her treating physicians and to the consultative physicians. Petitioner testified at the hearing and wrote in her Function Report on September 16, 2007, that she has trouble showering and using the toilet; she uses a cane and a walker; does little in the way of housework; rests in her recliner on a typical day for most of the day; and has no outside activities other than brief trips to the grocery store with her husband, who helps her shop. (AR 48—69, 166—74.) Petitioner's husband completed a report about his wife's activities on September 27, 2007, corroborating his wife's statements that she needs assistance with cooking, bathing, and using the toilet. (AR 175—83.)

Petitioner exhibited pain behaviors consistent with her underlying impairments and her description of daily activities when examined by the state agency physicians, Dr. Sant and Dr.

**MEMORANDUM DECISION AND ORDER - 8**

Levitt, on November 2, 2007, and December 4, 2007, respectively. (AR 303—308, 309—313.) For example, Dr. Sant, the orthopedic consultant, noted that Petitioner revealed "pain behavior, as well as some pain amplification behavior;" limited range of motion in her lumbar spine due to complaints of pain; significant discomfort in her lower back during external rotation of the hip; pain behavior with muscle testing despite relatively normal strength indications; complaints of pain during heel and toe walk; she walked slowly and deliberately and with an antalgic gait; she exhibited pain when dressing and undressing, as well as when getting on and off the examination table; and she had hypersensitivity to touch along her right calf. (AR 306—307.) Petitioner reported to psychologist Dr. Levitt, who did not find Petitioner to be malingering, that her daily activities are extremely limited, with long periods of rest, and other than reporting that she sat on the couch to eat rather than in her recliner, Petitioner's report of her activities of daily living to Dr. Levitt was consistent with the activities Petitioner self-reported on her Function Report and testified to at the hearing. (AR 311.)

The ALJ attempted to create an inconsistency between Petitioner's report of functioning and what she relayed to Dr. Levitt by contrasting her activities of lying down, reading, crocheting, and watching television on the one hand, with her report to Dr. Levitt that she was able to get out of bed, make breakfast, sit on the couch to eat, "do chores for a few minutes at a time," make a sandwich, and then was "worn out" by mid-afternoon. However, these reports are not inconsistent. Petitioner must get out of bed to watch television and crochet, and does not leave her house under either account of her daily activities. She is worn out by mid-afternoon, and only does what she can for a few minutes at a time. When her husband is working, she obviously must attend to her own self-care to the extent she can. There is no basis in fact for the

**MEMORANDUM DECISION AND ORDER - 9**

ALJ's conclusion that Petitioner's report of her activities to Dr. Levitt was inconsistent with her self-reports of her activities. By all accounts, Petitioner does very little due to her subjective complaints of pain and depression.

The ALJ erred in his analysis of Dr. Levitt's opinion when he concluded Petitioner's complaints of disability because of her depression are not credible. The ALJ relied heavily upon the clinical observations and conclusions of Dr. Levitt, who conducted a psychological interview during which Petitioner exhibited pain behaviors, but noted her cognitive functioning was within relatively normal limits. (AR 309—313, 29—30.) The ALJ noted that, during the interview, Petitioner spoke clearly and coherently, her affect was generally appropriate to the situation, her concentration was adequate, and Dr. Levitt was of the opinion that Petitioner had a high level of adaptability and average intelligence. From this, the ALJ concluded that Petitioner's complaints of depression and its effects were not credible.

Yet, the ALJ failed to discuss the implication of the absence of any conclusion by Dr. Levitt that Petitioner was malingering or somehow exaggerating her subjective experiences of pain and resulting depression, and failed to note that Dr. Levitt qualified his statements about Petitioner's mental clarity and adaptability with his opinion that both areas of functioning were affected by her narcotic and analgesic medications and her subjective experience of pain. (AR 313.) Dr. Sant listed Petitioner's medications, which included Paxil, Methadone, Darvocet, Soma, Lasix, Phentermine, and Lunesta. (AR 305.) Petitioner's medications also included Xanax. (AR 229.)

In addition, Petitioner has accurately noted that the ALJ failed to discuss Dr. Levitt's

**MEMORANDUM DECISION AND ORDER - 10**

opinion that Petitioner's Global Assessment of Functioning ("GAF") score was 48.[1] (Pet. Brief at 8, Dkt. 14.) The ALJ selectively accepted Dr. Levitt's positive findings and observations in support of his credibility analysis, yet failed to address all of Dr. Levitt's findings, most notably the low GAF score and Dr. Levitt's qualifications to his statements about Petitioner's level of functioning due to her medications and her subjective experience of pain.

An ALJ must consider all of the relevant evidence in the record, and is "not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 336 F.3d 1078, 1083 (10th Cir. 2004.) While a GAF score may not have a "direct correlation" to the severity requirements in the Listings, the ALJ's failure to address Petitioner's GAF score of 48, or its meaning regarding Petitioner's ability to maintain employment, was error. *Escardille v. Barnhart*, 2003 WL 21499999 *5—6 (E.D. Pa. June 24, 2003). As such, the ALJ erred by failing to properly consider the opinion of Dr. Levitt as a whole when using it to discount Petitioner's credibility about the limiting effects of her depression.

Lastly, the ALJ discredited Petitioner's subjective complaints of depression secondary to pain based upon her lack of treatment other than conservative drug therapy. The ALJ concluded that Petitioner's depressive symptoms were "not corroborated by her medical records. She has received proper medical management of her depression" from her treating physicians, which included management via prescription drugs such as Cymbalta, Paxil, and Xanax. (AR 29—30.) The ALJ concluded that Petitioner's "conservative course of mental health treatment is

---

[1] A Global Assessment of Functioning, or GAF, score is the "clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. . . . A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Amador v. Astrue*, 2009 WL 1514476 *4 n.3 (C.D. Cal. May 28, 2009) (citations omitted).

**MEMORANDUM DECISION AND ORDER - 11**

inconsistent with a level of severity that would preclude" sustained work activity. In reaching his conclusion, the ALJ fails to account for Petitioner's GAF score of 48, suggestive of serious symptoms, including an inability to keep a job. *See* note 1, supra. And while it is true that Petitioner's treating physician, Dr. Stoune, was managing Petitioner's depression with drug therapy, Dr. Levitt recommended individual psychotherapy sessions in addition to drug therapy in an effort to improve Petitioner's mood. (AR 312—313.)

While evidence of conservative treatment generally is sufficient to discount a claimant's testimony regarding the severity of impairment, the facts most often involve physical impairments, not psychological impairments. *See, e.g.*, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (discounting a claimant's physical complaints of pain when over-the-counter pain medication was used to treat her). The record in this matter indicates Petitioner actually would benefit from additional treatment that includes psychotherapy, and the fact that Petitioner may have failed to seek such treatment for her psychological condition is not a substantial basis upon which to conclude Petitioner is less than fully credible about the debilitating effects of her depression. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (finding the ALJ's reasons for rejecting the claimant's assertions about his depression on the basis that he failed to seek psychiatric treatment for his depression inadequate).

Based upon the foregoing, the Court finds that the ALJ erred in finding Petitioner less than fully credible.

### 2. Physician Testimony

Next, Petitioner asserts the ALJ erred in rejecting the medical opinion evidence of Dr. Stoune, Petitioner's treating physician since 2004, and in accepting Dr. Sant's opinion, an

examining source. Both Dr. Stoune and Dr. Sant relied upon the objective medical evidence of record in forming their opinions regarding Petitioner's disability due to her back pain. Dr. Sant, after a consultation in November of 2007, was of the opinion that, in spite of Petitioner's subjective complaints of pain, she could tolerate sitting, standing and walking with frequent position changes throughout an eight hour day, along with limitations on lifting, bending, stooping and twisting. In reliance upon Dr. Sant's opinion, the ALJ found Petitioner had the RFC to perform light work. In doing so, the ALJ rejected Dr. Stoune's opinion that Petitioner could not tolerate sitting, standing and walking throughout an eight hour day, because Dr. Stoune relied upon Petitioner's subjective complaints, which the ALJ found not credible; Dr. Stoune treated Petitioner conservatively; and Dr. Stoune's treatment notes lacked specificity and were inconsistent.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled

to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

      An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

      Reports of treating physicians submitted relative to a petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th

**MEMORANDUM DECISION AND ORDER - 14**

Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)).

First, the Court finds that Dr. Stoune's reliance on Petitioner's subjective complaints was an insufficient basis for rejecting Dr. Stoune's opinion. As discussed above, the Court finds that the ALJ's credibility assessment of Petitioner was in error. Second, the ALJ discredited Dr. Stoune because he treated her conservatively. However, Petitioner was prescribed more than just over-the-counter medications for her pain, which medication included fentanyl patches and methadone. Dr. Stoune in February of 2007 documented that Petitioner had "marked limitation of range of motion of the lumbar spine" causing her pain. (AR 244.) Physical therapy was not resulting in improvement. (AR 247.) And, Dr. Stoune's treatment regimen is supported considering nothing more can be done surgically to address Petitioner's lumbar spine ailments. (AR 347.)

Third, the ALJ created an inconsistency when there was none to be found. For example, the ALJ discredited Physician Assistant Keri Lefevre's decision on February 13, 2008, to increase Petitioner's methadone usage because the P.A's treatment notes describe Petitioner as a "well-developed, well-nourished patient, who was in no acute distress and very pleasant." (AR 337—38.) However, in the same treatment note, Ms. Lefevre found Petitioner was suffering from shortness of breath at rest, pain in both feet due to a finding that the soles were bluish and cyanotic in color, worsening complaints of pain, and she therefore increased Petitioner's methadone. The ALJ used Ms. Lefevre's note that Petitioner appeared well-developed and in no acute distress to in turn discredit Dr. Stoune's opinions. However, virtually every physician that examined Petitioner described Petitioner as being well-developed, well-nourished and in no acute distress. The ALJ cannot create an inconsistency by quoting an isolated sentence from the

**MEMORANDUM DECISION AND ORDER - 15**

physician's report when a plain reading of the record revealed no actual inconsistency. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ also failed to account for the worsening of Petitioner's diabetes. Dr. Stoune documented in June of 2009 that Petitioner was developing diabetic neuropathy. (AR 352.) The ALJ relies on one progress note from Dr. Syed, dated February 16, 2009, which indicated Petitioner's diabetes was "well controlled," along with a lab report dated October 22, 2008, to conclude Petitioner's diabetes was under control. (AR 28.) However, both of these progress notes were prior to Dr. Stoune's note in June of 2009, indicating Petitioner's diabetes was worsening with the development of neuropathy.

The ALJ further rejected Dr. Stoune's opinions because various progress notes indicated claimant was "coping" with her pain and depression, (AR 26), and by October of 2009, Petitioner reported she was doing fine. (AR 26, 28). However, Dr. Stoune noted that Petitioner reported severe knee pain, and ordered an MRI on November 4, 2009. (AR 446). On October 19, 2009, Petitioner actually reported that "everything else is fine and her pain is manageable with the pain pills," not that she was doing fine overall. (AR 448.) Dr. Stoune refilled Petitioner's Methadone and Darvocet on each monthly visit in August, September, October, and November of 2009. Dr. Stoune's notes never described any improvement in Petitioner's condition, but rather a worsening of her pain with the onset of severe knee pain. The fact that a person who suffers from chronic pain is "coping" with her pain does not equate with a conclusion that her impairments no longer seriously affect her ability to function in a workplace. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ erred also in rejecting Dr. Stoune's opinion that depression was not a limiting

**MEMORANDUM DECISION AND ORDER - 16**

factor by selectively choosing sections from Dr. Levitt's opinion, as discussed above. The ALJ failed to discuss the implications of the   GAF score of 48, which actually supports Dr. Stoune's opinion that Petitioner was suffering from depression as a result of her pain, which in Dr. Stoune's opinion contributed to the severity of Petitioner's limitations. (*See* AR 433—434.)

In this case, the Court concludes that substantial evidence does not exist in the record to support the reasons the ALJ gave for rejecting Dr. Stoune's opinion. When read in full and in context, Dr. Stoune's treatment notes are consistent with his opinion that Petitioner is unable to tolerate the demands of full time work in any capacity due to pain and her resulting depression. Because substantial evidence does not support the specific reasons the ALJ gave for rejecting Dr. Stoune's opinion concerning the question of Petitioner's disability, the Court concludes that the ALJ erred in rejecting Dr. Stoune's opinion in favor of Dr. Sant's opinion.

### 3. Vocational Expert Testimony

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217.

**MEMORANDUM DECISION AND ORDER - 17**

The ALJ asked the vocational expert a hypothetical question about whether an individual of Petitioner's age and education who was allowed to alternate between walking, standing and sitting for eight hours, limited to lifting 20 pounds occasionally, 10 pounds frequently, who could not climb ladders, and because of her psychological functioning could not tolerate high stress or deal with large numbers of people, and would require only routine tasks, could perform Petitioner's past relevant work as a cashier. The vocational expert responded that Petitioner could not, but that someone fitting such a description could perform work as a Cashier II at the unskilled level, although the number of jobs would be reduced from 1,800,000 to 500,000 to accommodate the requirement of alternating between sitting, standing and walking. The vocational expert was of the opinion also that such a person could work as an agricultural sorter or assembler of electrical accessories, but again the numbers would be reduced to accommodate the alternating sit/stand/walk requirement.

If Petitioner could only walk for 15 minutes at a time, stand up to 15 minutes at a time, and sit for 30 minutes at a time, the vocational expert still believed an individual would be able to perform the assembly type position and agricultural sorter position, based upon her own personal contact with employers to determine the physical requirements of the work. However, if the individual needed more than the allotted two 15-minute breaks and a lunch break, and would miss work more than two days each month, the vocational expert opined that all work would be precluded. The ALJ concluded Petitioner retained the RFC to perform light work, which included all of the occupations described by the vocational expert.

Petitioner argues that the hypothetical question posed to the vocational expert made inappropriate assumptions based upon the opinion from Dr. Sant and failed to consider all of

**MEMORANDUM DECISION AND ORDER - 18**

Petitioner's limitations supported by the record and the opinions of Dr. Stoune. The ALJ's

hypothetical question posed to the vocational expert was the same as the ALJ's RFC

determination, which in turn was based upon the ALJ's credibility assessment and his rejection

of Dr. Stoune's opinion in favor of Dr. Sant's opinion. As discussed above, the Court finds the

ALJ erred in his rejection of Dr. Stoune's opinions and in his assessment of Petitioner's

credibility. Therefore, the ALJ's hypothetical did not include all of Petitioner's limitations

supported by substantial evidence in the record.

      Second, Petitioner argues that the ALJ's RFC determination was in error because the ALJ

did not resolve the conflict between the DOT requirements for sitting, standing and walking

inherent in light work with the vocational expert's testimony. According to the DOT, light work

requires prolonged periods of walking or standing, or sitting most of the time with pushing or

pulling, or both, of arm or leg controls. DICTIONARY OF OCCUPATIONAL TITLES, Appendix C,

1991 WL 688702, (4th ed. 1991). The vocational expert's testimony, however, reduced the

available numbers of representative jobs to accommodate more frequent rotation between

walking, standing or sitting. (AR 32, 79—81.)

      The ALJ concluded that the vocational expert's testimony was consistent with the

information contained in the DOT. However, by so concluding, the ALJ failed to explain the

apparent conflict between the DOT's definition of light work, which requires either significant

periods of walking, standing or sitting, with the vocational expert's testimony. By reducing the

number of jobs available for the representative positions to accommodate more frequent position

changes than specified by the DOT, the vocational expert necessarily was testifying that the

hypothetical given was inconsistent with the DOT's definition of light work, contrary to the

**MEMORANDUM DECISION AND ORDER - 19**

ALJ's conclusion.

The vocational expert's testimony was not consistent with the information in the DOT. Yet, the ALJ did not resolve this conflict before relying upon the vocational expert's evidence to support his determination that Petitioner retained the RFC for light work. *See* SSR 00-4p; *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (explaining that an ALJ justifiably relies upon vocational expert testimony deviating from the DOT when the record contains persuasive evidence to support the deviation).

## CONCLUSION

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is reversed, and this case is remanded for further consideration.[2]

---

[2] In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion), *cert. denied*, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). Petitioner contends that, if her testimony is credited as true, the Court should remand for an award of benefits. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007). If there are no outstanding issues to be resolved once the Petitioner's testimony is credited as true, the Court does not remand for further proceedings. *Id.* In this matter, it is not clear from the record that crediting the Petitioner's testimony as true would result in a finding of disability. Unlike in *Lingenfelter*, the ALJ did not pose a question to the vocational expert that incorporated the pain and physical limitations testified to by Petitioner, nor did he consider fully her psychological impairments.

**MEMORANDUM DECISION AND ORDER - 20**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with

42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir.

2002).

Dated: **March 20, 2012**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**